291 N.J. Super. 454 (1995)
677 A.2d 806
STATE OF NEW JERSEY IN THE INTEREST OF PHILLIP PRESHA, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part Burlington County.
Decided April 4, 1995.
*455 MARTIN C. MOONEY, SR., Assistant Prosecutor of Burlington County, for the State.
BARBARA SCHNEPPER, Public Defender, for defendant.
SCHLESINGER, J.S.C.
This is an application made by three newspapers pursuant to R. 5:19-2 and N.J.S.A. 2A:4A-60.i. to intervene and to permit public attendance during all court proceedings in this juvenile delinquency matter. The motion to intervene is unopposed and is granted. The juvenile opposes the merits of the application, whereas the State of New Jersey takes a neutral stance and submits to the court's discretion. The initial proceeding involved is the so-called "waiver" hearing designed to determine whether or not this juvenile should be treated as an adult offender pursuant to N.J.S.A. 2A:4A-26 and R. 5:22-2.

*456 I. THE FACTUAL BACKGROUND

On Monday, February 27, 1995, at a little after midnight, James and Sara Oldham, age 70 and 73, respectively, were brutally attacked and stabbed in the living room of their home on Pastoral Lane in the Pennypacker Park Section of Willingboro. The two attackers broke into the Oldham's home around midnight by kicking in the front door. The victim's telephone line was cut prior to entry. Both James and Sara Oldham were threatened with death and stabbed. According to Mr. Oldham, both intruders held knives and wore hoods or masks which concealed their faces. The intruders took $50 from Mrs. Oldham's purse and then left through the front door. The Oldham's cries for help drew the attention of neighbors who dialed 911 and came to assist the couple. The attackers fled on foot through fresh snow. The tracks led to the home of Phillip Presha, a juvenile born on March 11, 1978 who lived on Poplar Lane. The police arrested Phillip Presha and an adult present at Phillip Presha's home when they arrived. Both Phillip Presha and the adult were charged with Attempted Murder, Aggravated Assault, Roberry, Burglary, Theft and Possession of a Weapon for Unlawful Purpose.

II. WHAT IS THE APPLICABLE STATUTORY STANDARD?

This application must be evaluated by the standards set forth in the statute, N.J.S.A. 2A:4A-60.i. and R. 5:19-2. The statute and Rule provide in their pertinent part as follows:
The Court may, upon application by ... members of the news media, permit public attendance during any court proceeding at a delinquency case, where it determines that there is no substantial likelihood that specific harm to the juvenile would result.

[(emphasis added)]
It should be noted that N.J.S.A. 2A:4A-60.f. which deals with post adjudication confidentiality does contain specific language indicating that the juvenile has the burden of persuasion on the issue of whether there is a substantial risk of specific harm. That sub-section provides in its pertinent parts as follows:

*457 Information as to the identity of a juvenile adjudicated delinquent, the offense, the adjudication and the disposition shall be disclosed to the public where the offense for which the juvenile has been adjudicated delinquent if committed by an adult, would constitute a crime of the first, second or third degree ... unless upon application at the time of disposition the juvenile demonstrates a substantial likelihood that specific harm would result from such disclosure.
[Id.]
Although N.J.S.A. 2A:4A-60.i. is inartfully worded, and does not contain the presumption which is contained in N.J.S.A. 2A:4A-60.f., the burden of production and persuasion generally is placed upon the party with better access to the relevant information. J.E. on Behalf of G.E. v. State, 131 N.J. 552, 569-70, 622 A.2d 227 (1993). That party is clearly the juvenile and even though subsection i. does not contain the "juvenile demonstrates" language set forth in subsection f., it does not appear that the Legislature intended to place the burden of persuasion upon the intervenors. The construction of a statute should not produce a result which is "at odds with the sense of the situation," Rovin v. Sharper, 53 N.J. 338, 340, 250 A.2d 745 (1969). The juvenile is the only one who would have access to the pertinent information which would establish a substantial risk of specific harm, and thus should have the burden of persuasion on this issue. Although it is not significant, it would appear that the burden of going forward, as opposed to the burden of persuasion, would remain upon the applicants. However, that burden would be extremely minimal and consist only of establishing the fact that the applicants have the standing to make the application and that there is a court proceeding and a delinquency case pending to which they seek access. Once that burden of going forward is met, the juvenile has the burden of persuasion to establish that there is a substantial likelihood of harm to him from opening the proceedings to public scrutiny.
For the reasons set forth above, I conclude that N.J.S.A. 2A:4A-60.i. effectively creates a presumption of public access upon application, which is defeated only by the juvenile establishing by a greater weight of the evidence that public attendance would pose a substantial likelihood of specific harm to the juvenile.

*458 III. DOES THE COURT RETAIN DISCRETION TO DENY PUBLIC ATTENDANCE EVEN THOUGH THERE IS NO SHOWING OF A SUBSTANTIAL LIKELIHOOD OF SPECIFIC HARM TO THE JUVENILE?

In State in the Interest of B.J.W., 250 N.J. Super. 619, 595 A.2d 1132 (Ch.Div. 1991), Judge Herr held that if a determination of a substantial likelihood of specific harm is made, the court retains no discretion but must prohibit public attendance. On the other hand, Judge Herr concluded that even if there is no substantial likelihood of specific harm that would result from public attendance, the Legislature intended that the court could still exercise its discretion whether to admit or deny the public. Judge Herr's conclusion was based on the use of the word "may" by the Legislature rather than the word "shall." The use of the word "may" by the Legislature could have been the result of the desire of the Legislature to avoid confrontation between co-equal branches of the government on the issue of whether the court has inherent power to control its own proceedings without legislative interference. Winberry v. Salisbury, 5 N.J. 240, 74 A.2d 406 (1950); State In Interest of W.C., 85 N.J. 218, 426 A.2d 50 (1981). To the extent that a court has inherent power to control its own proceedings, particularly in the sensitive arena of the family division, I conclude that the court does retain inherent authority to close juvenile proceedings even where there is no substantial likelihood of specific harm of the juvenile. For example, opening the proceedings might under certain factual patterns expose other juveniles or family members not charged with any criminal behavior to serious harm or may expose juvenile co-defendants to such harm. Under such circumstances, even though the statutory standard of substantial risk of specific harm to the juvenile charged is not met, I believe the court could still exercise its inherent powers and deny access, subject always to constitutional standards.
Therefore, I conclude that the legislative intent underlying N.J.S.A. 2A:4A-60.i. does permit the closing of juvenile proceedings *459 to the public, even if there is a no showing of specific harm to the juvenile involved. Under the statute, the court does retain its inherent power to control access to its own proceedings, subject only to state and federal constitutional requirements.

IV. WHAT CONSTITUTES "A SUBSTANTIAL RISK OF SPECIFIC HARM TO THE JUVENILE?"

State In the Interest of B.J.W., supra, is the only reported opinion dealing with what constitutes specific harm to the juvenile. Based upon expert testimony presented by the juvenile, Judge Herr concluded that publicity of the proceedings would undermine the juvenile's confidence in her psychologist and would inhibit the bonding with her father and brother that was critical to her overcoming her psychological disorder. Based on this finding of "specific harm to the juvenile," Judge Herr closed the proceedings to the public and the press.
My reading of the statute is that the words "specific harm" must be interpreted as meaning a harm that is unique to the juvenile before the court, as opposed to the generalized harm that might be suffered by any juvenile having his or her proceeding open to the public. For example, potential extensive publicity which might affect the fair trial rights of the juvenile in a jury trial should a waiver be granted, falls into the category of generalized, as opposed to specific harm. Likewise, the prospect that the juvenile or the family may be embarrassed, humiliated or ostracized, would also fall into the category of generalized harm in the absence of proofs that these factors would specifically affect the juvenile in question in a harmful manner beyond the effect these factors would have on any juveniles. In other words, the general adverse effects of publicity from access are presumed and cannot be utilized as grounds to deny access. On the other hand, a showing that the particular juvenile's course of therapy and rehabilitation will be substantially impaired by access and its attendant publicity would constitute the type of specific harm envisioned by the Legislature. This is the type of harm which led Judge Herr *460 to deny access in State in the Interest of B.J.W., supra, i.e., the substantial likelihood that access would destroy the juvenile's bonding to her father and brother and delay the juvenile's ability to address her disorders. These negative impacts would have resulted from that juvenile sharing with the public the confidences revealed in the psychologist-patient relationship which presumably would be exposed at the rehabilitation phase of the waiver hearing.
Finally, it should be noted that the Legislature in the pertinent statute used the phrase "a substantial likelihood that specific harm to the juvenile would not result" rather than requiring "a likelihood that substantial specific harm to the juvenile would not result." In other words, the emphasis is on "substantial likelihood" as opposed to "substantial specific harm." I conclude from this language that, in making a determination as to whether specific harm exists, the emphasis should be on the existence of a specific harm and the substantial likelihood of its occurring rather than on the seriousness of that harm to the juvenile. In other words, relatively minor specific harm to the juvenile may suffice to deny access if there is a substantial likelihood of its occurring, even though other factors favoring public access are strong. Although the court may be entitled to engage in some balancing in determining the existence of the substantial likelihood of specific harm, in this weighing process the scales are balanced in favor of the juvenile, not the public, since the scales have already been tipped by the Legislature in favor of the public by presuming access unless a substantial likelihood of specific harm is shown.

V. DID THE JUVENILE PROVE A SUBSTANTIAL LIKELIHOOD OF SPECIFIC HARM?

Here, the juvenile did not present any evidence whatsoever to indicate a substantial likelihood of specific harm. Reliance was placed solely on the impact that press coverage and other publicity would have in increasing the trauma to the juvenile and other family members. I have already determined that this type of *461 generalized harm must be presumed from public access and does not constitute the specific harm envisioned by the Legislature in enacting N.J.S.A. 2A:4A-60.i. Therefore, the statutory standard for denying public access has not been met.

V. ABSENT A SUBSTANTIAL LIKELIHOOD OF SPECIFIC HARM, SHOULD THE COURT EXERCISE ITS DISCRETION TO DENY PUBLIC ACCESS?

The juvenile argues that I should exercise my discretion to deny access even in the absence of specific harm. However, I believe that I should exercise such discretion only under extraordinary circumstances, or else the legislative intent to create a presumption of public access absent specific harm would be thwarted. As noted previously, such extraordinary circumstances might include the protection of a juvenile co-defendant or the protection of other innocent juveniles or other innocent family members. I find that here no extraordinary circumstances have been established which would compel the court to use its residual discretion to deny public access.

CONCLUSION
The offense alleged here to have been committed by this juvenile is particularly heinous. It involves the brutal attack and stabbing of two senior citizens in the living room of their residence after the phone line had been cut, which attack was apparently motivated by robbery. The goal of rehabilitating the juvenile must be balanced against the public's right to be informed. As noted previously, the Legislature has clearly tipped the balance in favor of the public's right to know and access must be permitted unless there is a substantial likelihood of specific harm to the juvenile. The public's right to know includes not only its right to know the facts but also the salutary effect of which publicity may have in deterring the affected juvenile and others. Access is particularly appropriate where the offense is serious (as here), because in such cases rehabilitation is less probable. The community *462 interest in public access to these proceedings is great, by reason of the heinous nature of this offense and the apparent premeditation.
For these reasons and particularly for the failure of the juvenile to have proven substantial likelihood of special harm, the intervenor's motion is granted and the waiver hearing, both Parts 1 (Probable Cause) and Part 2 (Rehabilitation) will be open to the public. However, I reserve the right to close certain portions of the Part 2 (Rehabilitation) hearing to the public in the event I determine that exposure of certain testimony to the public will cause specific harm to the juvenile or expose other juveniles to such specific harm.