WALTER ROMAN, PLAINTIFF-RESPONDENT, v. HORACE P. SHARPER, INTERVENOR-APPELLANT, v. HARRY REICHENSTEIN, CITY CLERK OF THE CITY OF NEWARK, NEW JERSEY, AND CITY OF NEWARK, NEW JERSEY, A MUNICIPAL CORPORATION, DEFENDANTS.

Argued February 17, 1969—Decided March 5, 1969.

*Mr. Joel L. Leibowitz* argued the cause for appellant (*Mr. Edward S. Snyder,* on the brief; *Messrs. Rudd, Ackerman and Breitkopf,* attorneys).

*Mr. David Friedland* argued the cause for respondent Roman (*Messrs. Friedland, Schneider and Friedland,* attorneys).

*Mr. Anthony J. Iuliani* argued the cause for the City Clerk.

*Mrs. Rita L. Bender* submitted a brief on behalf of Community Legal Action Workshop of the Roger Baldwin Foundation of the American Civil Liberties Union of New Jersey, *amicus curiae* (*Mr. Stephen M. Nagler,* of counsel).

*Mr. Robert Tessler* submitted a brief on behalf of intervenor Leon Ewing (*Messrs. Yankowitz and Tessler,* attorneys).

The opinion of the court was delivered

PER CURIAM. A petition for the recall of the councilman elected from the South Ward of the City of Newark was filed with the City Clerk, who, finding the petition sufficient, notified the incumbent that a recall election would be scheduled. This suit was brought to restrain the election. The trial court gave judgment for plaintiff upon the ground that the signatures were insufficient in number. We certified the appeal before argument in the Appellate Division.

The City of Newark is governed by the Optional Municipal Charter Law. The statute provides, *N. J. S. A.* 40:69A–169:

"A recall petition * * * shall be signed by qualified voters equal in number to at least twenty-five per centum (25%) of the registered voters of the municipality * * *."

Under some of the plans of government created by that statute, councilmen are elected from wards, and that is the case in Newark. The recall petition was signed by 11,300 of the registered voters of the South Ward, which exceeds 25% of the total of 30,155 such voters of that ward, but is less than 25% of the total registered voters in the City, who number 136,861. The trial court held that the petition must be signed by at least 25% of the total registered voters of the City. Upon one reading of the statute, the view of the trial court could be said to be correct, but we think the result is at odds with the sense of the situation.

Plaintiff contends that "qualified voters" means only "registered voters." Upon that reading, a recall could be initiated by voters who reside outside the ward and who therefore could not vote for the recall or for a successor if the incumbent is recalled. Possible constitutional questions aside, there is no reason to suppose the Legislature intended anything so unique. Still upon that reading of the statute, it could be beyond the power of all of the registered voters of a ward to initiate a recall of their councilman, and that would be so here since the total registered voters of the South Ward number less than 25% of the registered voters

of the City. It would be strange to deny the power to initiate a recall to the voters who alone can vote upon the recall question.

 There of course is no constitutional right to recall officeholders, and the Legislature, if it wishes to provide that mechanism, can specify rational restraints upon it. We should assume the Legislature intended a reasonable approach, and we should construe the statute to provide one if we can. It being clear the Legislature intended to invest the power of initiation in 25% of a group of voters, the problem is to identify that group. Sensibly the group should be the group that can vote to recall and to elect a successor. In the case of a ward election, that group of course is the electorate of that ward and not the electorate of the entire City.

To read the statute as does the plaintiff would delete the words we italicize:

"A recall petition * * * shall be signed by *qualified voters equal in number to* at least twenty-five per centum (25%) of the registered voters of the municipality * * *."

Thus excised would be the words "qualified voters," which we think embody the decisive concept. In this context, "qualified voters" must mean those voters who are qualified to vote at the recall election. The preceding section, *N. J. S. A.* 40:69A–168, reads:

"Any elective officer shall be subject to removal from office for cause connected with his office, after he has served at least one year, upon the filing of a recall petition and the affirmative vote of a majority of those *voting on the question of removal* at any general, regular municipal or special election." (Emphasis added.)

We think that "qualified voters" in section 169 refers to those eligible to vote at the recall election described in section 168, and in the case of a ward election, it means

voters registered from that ward and therefore "qualified" to vote at the election.

Hence in the case of a ward councilman the petition may be signed only by registered voters of that ward. What, then, of the requirement that the signatories shall equal at least 25% of the registered voters of "the municipality"? The Legislature had to know that 25% of the registered voters of a ward would probably be less than 25% of the registered voters of the City with five wards. Unless we are to attribute to the Legislature a purpose to legislate idly, we must find the percentage applies to the total voter registry of the ward concerned rather than of the entire municipality.

This result can be achieved by adding inferentially to "the registered voters of the municipality" the words "qualified to vote," thus carrying forward the limitation of "qualified voters" in the earlier portion of the section and the basic election thesis of the preceding section, *N. J. S. A.* 40:69*A*–168, to which we have referred. So read, a critic could find the provision in question is wordier than need be. Nonetheless the fact remains that we must choose between two imperfect expressions. This being the case, we should select that view which accords with probable legislative intent, and the probable intention is to commit the subject of recall to the voters qualified to vote at the ensuing election and to them alone.

We are aware of *N. J. S. A.* 40:69*A*–153 which, dealing with petitions for nomination of candidates for the regular municipal election, speaks of a percentage "of the registered voters of the municipality *or the ward, as the case may be.*" Abstractly, a difference in phrasing may be meaningful, but here it would go against the grain of the statute to infer a conscious purpose to select the entire municipality as the base for a recall petition affecting a single ward.

The judgment is therefore reversed. There being other questions not yet resolved by the trial court, the matter is remanded for further proceedings not inconsistent with this opinion.

*For reversal and remandment* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For affirmance* — None.