160 N.J. Super. 153 (1978)
388 A.2d 1335
IRWIN P. GRANGE, PLAINTIFF-RESPONDENT,
v.
MURIEL E. GRANGE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1978.
Decided June 22, 1978.
*154 Before Judges LORA, SEIDMAN and MILMED.
Mr. James B. Convery argued the cause for appellant (Messrs. Convery and Convery, attorneys; Mr. Clark W. Convery on the brief).
Mr. Harvey Blaustein argued the cause for respondent (Messrs. Bressler and Blaustein, P.A., attorneys).
PER CURIAM.
In April 1977 plaintiff, who then resided in New Jersey (he has since moved to Michigan), filed a complaint for divorce. Defendant, now a resident of Florida, filed an answer and counterclaim. Each sought, in addition to other relief, the equitable distribution of all marital property. By letter dated August 24, 1977 plaintiff, through his attorney, advised defendant's attorney that the subdivision complex containing the condominium at 327 Alpine Court, Stanhope, New Jersey, in which the parties had formerly resided, was the subject of a foreclosure action and requested that defendant cooperate in selling the same. The letter set forth that plaintiff had obtained an appraisal indicating a negative equity in the property of $5,306.74, and that he could not afford to continue to maintain three residences, pay pendente lite support and defendant's counsel fees.
On October 21, 1977 plaintiff moved to compel defendant to execute the necessary documents to convey title to the Stanhope premises to Homequity, Inc. (which had appraised the property at $29,500 with a resultant negative equity of $5,306.74), with the issue of the net loss to be reserved for the final hearing.
*155 On the return day of the motion plaintiff's counsel argued that "where equitable distribution is before the Court, that should the wife execute the documents, then that doesn't mean by any token that she's accepting the loss. She has the right, obviously, to make an appraisal of the property." The judge's response was, "I think we have a duty here on equitable distribution, particularly when nobody is in the house to minimize losses. It appears to have been a very bad investment." Defendant's counsel took the position that his client was entitled to an independent appraisal of the property. The judge thereupon granted the motion for a sale and directed defendant to execute the documents, but withheld the order for ten days to enable the wife to obtain her own appraisal, if she so desired. Defendant, however, did not submit any appraisals to the court.
The judge noticed the parties for a hearing on January 6, 1978 to settle the form of order. Plaintiff requested an adjournment and defendant states the matter was thereafter heard in camera on January 27, 1978. Plaintiff says it was an in camera conference during which arrangements suitable to all parties were negotiated and that it was agreed that defendant would have protection as and for the issues of equitable distribution if the issues were expressly reserved for final hearing and if plaintiff agreed not to dispose of or encumber real estate owned by him in Florida (with defendant as tenants by the entirety) and in Michigan. There is no transcript of what transpired.
In any event, the judge issued an order dated February 1, 1978 ordering Homequity, Inc. to furnish copies of appraisals referred to in "Preliminary Closing Statement" to defendant's counsel and providing that defendant shall have the right to appraise the marital dwelling within 14 days of January 27, 1978, and that the marital dwelling shall be sold pursuant to said closing statement filed with the court on October 17, 1977 that his client was entitled to an independent appraisal of the property. The judge thereupon granted the motion for a sale and directed defendant to execute *156 the documents, but withheld the order for ten days to enable the wife to obtain her own appraisal, if she so desired. Defendant, however, did not submit any appraisals to the court.
The judge noticed the parties for a hearing on January 6, 1978 to settle the form of order. Plaintiff requested an adjournment and defendant states the matter was thereafter heard in camera on January 27, 1978. Plaintiff says it was an in camera conference during which arrangements suitable to all parties were negotiated and that it was agreed that defendant would have protection as and for the issues of equitable distribution if the issues were expressly reserved for final hearing and if plaintiff agreed not to dispose of or encumber real estate owned by him in Florida (with defendant as tenants by the entirety) and in Michigan. There is no transcript of what transpired.
In any event, the judge issued an order dated February 1, 1978 ordering Homequity, Inc. to furnish copies of appraisals referred to in "Preliminary Closing Statement" to defendant's counsel and providing that defendant shall have the right to appraise the marital dwelling within 14 days of January 27, 1978, and that the marital dwelling shall be sold pursuant to said closing statement filed with the court on October 17, 1977 within 14 days of January 27, 1978 without prejudice to defendant's "right to challenge said sale as to purchase price and/or seek equitable distribution based upon said Fair Market Value of said wanted dwelling." The order further restrained plaintiff from the sale or encumbrance of the Michigan and Florida properties pending equitable distribution of the assets of the marriage.
On February 9, 1978 defendant filed a proposed order to show cause why the February 1 order should not be vacated along with an affidavit by defendant's attorney stating that he had been advised that similar units in the complex were being offered for sale at a minimum price of $39,000. Defendant did not, however, submit an appraisal of the unit in question. She states that her attorney had subpoenaed *157 witnesses for the return day, March 23, 1978, and served a notice to produce upon plaintiff in order to present her claim that the value of the property exceeded that advanced by plaintiff but they were advised the court did not intend to take oral testimony concerning the value of the property.
Defendant then sought to introduce an affidavit by one Louis Ettore, an employee of the designated sales agent of the complex, stating that the most recent sale of a similar unit therein was at $44,790. The judge, however, ruled that the affidavit was untimely filed and therefore would not admit it into evidence. No appraisal of the unit in question was submitted by defendant.
The judge then by order dated April 5, 1978 directed defendant comply with the February 1, 1978 order and, in the event that she failed to do so on or before April 2, 1978, that the court appointed attorney-in-fact, Robert S. Kinton, Esq., execute all documents required to accomplish the conveyance with the full force and effect as if executed by the defendant.
On April 12, 1978 we granted a stay of the order of April 5, 1978 and pursuant to R. 2:11-2 accelerated the appeal on our own motion.
Preliminarily, we note that plaintiff's contention that defendant's motion for leave to appeal was not timely filed and therefore this appeal is not properly before this court, is without merit. R. 2:11-3(e) (1) (E).
Simply stated, the basic issue on appeal is whether in a matrimonial matter the court may make a pendente lite order relating to the equitable distribution of the marital assets and, more specifically, order the sale of the marital dwelling absent the consent of the parties. Defendant contends that the trial judge erred in ordering the marital dwelling sold, albeit it is vacant, since an order effecting equitable distribution may be awarded only after a judgment of divorce. She also asserts the judge did not have the power to compel her, or to authorize an attorney-in-fact, to execute *158 the conveyance papers prior to the dissolution of the marriage by a judgment of divorce. We agree.
We are, of course, mindful that pursuant to N.J.S.A. 2A:34-23, the court, pending any matrimonial action, is vested with wide discretion in making such orders as are necessary for the maintenance of the parties and may sequester the rents and profits of the real estate of the party charged by an order of support or maintenance. Martindell v. Martindell, 21 N.J. 341, 355 (1956); Woodhouse v. Woodhouse, 17 N.J. 409, 416 (1955). However, we know of no statutory authority for pendente lite action of this kind in connection with equitable distribution.
N.J.S.A. 2A:34-23 provides that in all actions where a judgment of divorce or divorce from bed and board is entered the court may make such award as is necessary to effectuate an equitable distribution of the marital assets. It follows, then, that the court is without authority to order a predivorce distribution of a tenancy by the entirety. Moreover, such distribution would violate the very concept of a tenancy by the entirety and its attributes of a tenancy in common between husband and wife for their joint lives with the remainder of the survivor in fee. See, e.g., Schumann v. Curry, 121 N.J. Eq. 439, 441 (Ch. 1937); King v. Greene, 30 N.J. 395 (1959); Schulz v. Ziegler, 80 N.J. Eq. 199, 202 (E. & A. 1912).
It has been generally held that where a husband or wife is unwilling to execute papers for the sale of an estate by the entirety, the Chancery Division does not have the power to order him or her to do so. See Peeler v. Levy, 26 N.J. Eq. 330, 331 (Ch. 1875); In re Riva, 83 N.J. Eq. 200, 204 (Ch. 1914); Zanzonico v. Zanzonico, 24 N.J. Misc. 153, 157 (Sup. Ct. 1946); 10 N.J. Practice (Herr & Lodge, Marriage, Divorce, and Seperation), § 174 at 153 (1963).
Accordingly, it is our conclusion that the trial judge did not have the power to order defendant or the court's *159 designated attorney-in-fact to execute the conveyance papers prior to the dissolution of the marriage by a judgment of divorce. Having so concluded, we do not deem it necessary nor do we pass upon the remaining contentions of the parties.
Reversed and remanded to the Chancery Division for trial of the complaint and counterclaim for divorce and the issue of equitable distribution of the marital assets. Jurisdiction is not retained.