693 A.2d 564

REGINA PELOW, PLAINTIFF, v. FRANK
A. PELOW, DEFENDANT.

Superior Court of New Jersey
Chancery Division Family Part
Monmouth County

November 8, 1996.[1]

---

1 A motion for reconsideration was filed on November 18, 1996, and was denied on December 6, 1996.

*Brenda M. Helt,* for plaintiff.

*Valerie Hemhauser,* for defendant.

HAYSER, J.T.C., temporarily assigned.

The issue presented is whether the court may order, under the circumstances in this case, the sale, *pendente lite,* of real property held by the parties as tenants by the entirety. Resolution of this

issue requires consideration as to the continued application of the holding in *Grange v. Grange,* 160 *N.J.Super.* 153, 388 *A.*2d 1335 (App.Div.1978).

Plaintiff filed a complaint for divorce on March 13, 1996. Defendant filed an answer and counterclaim on May 15, 1996. In addition to other relief, each sought the equitable distribution of all property acquired during marriage, both real and personal.

On October 18, 1996, plaintiff filed a motion seeking, among other things, an order requiring the defendant to assume sixty-one percent of the monthly mortgage, taxes and homeowner's insurance expenses for the marital residence. Defendant responded on October 30, 1996, by filing a cross-motion seeking, among other things, an order requiring the sale of the marital residence. Following a hearing on November 8, 1996, the court ordered, among other things, the immediate listing of the marital residence for sale.

Plaintiff argues that requiring the listing of the marital home for sale, *pendente lite,* and held by the parties as tenants by the entirety, is prohibited under the *Grange* decision. To the contrary, defendant argues that under the applicable statute, *N.J.S.A.* 2A:34–23, *Grange* itself, and subsequent decisions, such an order is permitted under the facts of this case.

## I. *The Precedential Value and Holding of Grange*

It is beyond dispute that the principles of *stare decisis* bar a trial court from disobeying pronouncements of appellate courts. *Reinauer Realty Corp. v. Borough of Paramus,* 34 *N.J.* 406, 415, 169 *A.*2d 814 (1961), cited in *State v. Williams,* 194 *N.J.Super.* 590, 596, 477 *A.*2d 445 (Law Div.1984). Moreover, the mere passage of time from an earlier appellate decision, without the undermining of the rationale of that decision by either the Appellate Division or the Supreme Court, is not a basis for determining that the earlier decision is no longer controlling. *Haber v. Haber,* 253 *N.J.Super.* 413, 417, 601 *A.*2d 1199 (App.Div.1992). In other words, subsequent decisions of trial courts cannot by "mere force of chronologi-

cal circumstances" overrule an earlier rule of law set down in an appellate opinion. *State v. Turetsky*, 78 *N.J.Super.* 203, 214, 188 *A.*2d 198 (App.Div.1963).

Nevertheless, the precedential effect of an opinion depends upon what issue squarely presented the court intended to resolve, or, in other words, what the court did, and did not intend to decide. *Feldman v. Lederle Laboratories*, 125 *N.J.* 117, 132, 592 *A.*2d 1176 (1991). Therefore, we must determine the scope of the holding in *Grange.*

In *Grange*, the parties sought equitable distribution of their several marital properties. While the matter was pending, a foreclosure action was commenced as to one of the properties, which was unoccupied. As a result, plaintiff had requested the defendant's cooperation in achieving the sale of the property as a more suitable alternative. Defendant refused and the plaintiff filed a motion to compel the defendant to approve a sale.

Although the plaintiff had earlier claimed that he could not afford to continue to maintain three residences for the parties and pay *pendente lite* support to the defendant, the trial court only concluded at the motion hearing that for equitable distribution purposes, this unoccupied residence, a stated "bad investment," should be sold "to minimize losses." *Grange, supra,* 160 *N.J.Super.* at 155, 388 *A.*2d 1335. Defendant, apparently, only questioned the sale on the issue of the sales price and whether it represented market value.[2] *Id.* at 156–57, 388 *A.*2d 1335. Eventually the sale was formally ordered and an appeal resulted.

The Appellate Division stated that "the basic issue on appeal is whether in a matrimonial matter the court may make a *pendente lite* order relating to the equitable distribution of the marital assets and, more specifically, order the sale of the marital dwelling absent the consent of the parties." *Id.* at 157, 388 *A.*2d 1335.

---

[2] The court notes that while defendant sought the right to submit her own appraisal as to the market value of the property, it was never submitted to the trial court. *Grange,* 160 *N.J.Super.* at 155, 388 A.2d 1335.

While the court acknowledged the existence of the broad equitable powers provided to a trial court under *N.J.S.A.* 2A:34–23 to make "such orders as are necessary for the maintenance of the parties," it found that there existed "no statutory authority for *pendente lite* action of *this kind in connection with equitable distribution."* *Id.* at 158, 388 *A*.2d 1335 (second emphasis added).

As a result, the appellate court concluded that under the cited statute providing for equitable distribution where a *"judgment* of divorce or divorce from bed and board is entered, ... the [trial] court is without authority to order a predivorce distribution of a tenancy by the entirety." *Id.* (emphasis added). Finally, the court concluded that "such distribution would violate the very concept of a tenancy by the entirety and its attributes of a tenancy in common between husband and wife for the joint lives with the remainder to the survivor in fee." *Id.*

## II. *The Purpose of Tenancies by the Entirety.*

The nature of a tenancy by the entirety has been described in such cases as *Dvorken v. Barrett,* 100 *N.J.Super.* 306, 241 *A*.2d 841 (App.Div.1968):

An estate by the entirety has been described as a remnant of other times. . . . Its anomalous nature has been fully set forth in numerous decisions. . . . Suffice it to note that in an estate by the entirety, husband and wife in effect hold as tenants in common for their joint lives; that survivorship exists which is indestructible by unilateral action, and that the rights of each spouse in the estate are alienable, the purchaser becoming a tenant in common with the remaining spouse for the joint lives of the husband and wife and acquiring the fee if the grantor spouse becomes a survivor. Creditors of a debtor spouse can levy upon and sell the debtor spouse's one-half interest in the life estate for the joint lives as well as that spouse's right of survivorship. . . . However, during coverture, neither spouse may have partition of an estate by the entirety.

[*Id.* at 308–09, 241 *A*.2d 841 (citations omitted).]

However, the concept of tenancy by the entirety only survives in the interest of the married parties to achieve the social purposes of protecting marital assets during coverture and as security for one spouse on the death of the other. *Freda v. Commercial Trust Company of New Jersey,* 118 *N.J.* 36, 46, 570 *A*.2d 409 (1990); *Newman v. Chase,* 70 *N.J.* 254, 264–65, 359 *A*.2d

474 (1976) (tenancies by the entirety "serve the ends of public policy"). The policy, in other words, is to protect the marital residence for the benefit of a spouse and any dependent children. *In re Youmans,* 117 *B.R.* 113, 117 (1990).

Specifically, what is the practical impact of this social policy, viewed through legislative action, on the common law form of tenancy by the entirety? Certainly, in another context, all property is held in subordination of the police power. *Collins v. Board of Adjustment of Margate City,* 3 *N.J.* 200, 206, 69 *A.*2d 708 (1949). Can less be said as to the exercise of legislative authority to advance the above social policy, particularly when the goal is not simply for the purpose that "during coverture . . . [one] spouse may have partition of an estate by the entirety"? *Dvorken,* 100 *N.J.Super.* at 309, 241 *A.*2d 841. Clearly, it can not, in view of the very unchallenged statutory framework established under *N.J.S.A.* 2A:34–23, providing for resolving issues as to custody, support and equitable distribution which promotes, if not mandates, such a conclusion. Particularly as *parens patriae,* the state has a long established interest in the protection of children. *Lippincott v. Lippincott,* 97 *N.J.Eq.,* 517, 519–21, 128 *A.* 254 (E. & A.1925).

III. *Statutory Interpretation of N.J.S.A. 2A:34–23*

*N.J.S.A.* 2A:34–23 provides, in relevant part, as follows:

Pending any matrimonial action brought in this state or elsewhere, or after judgment of divorce or maintenance, whether obtained in this state or elsewhere, the court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just,. . . .

. . . . . . . .

In all actions where a judgment of divorce or divorce from bed and board is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage.

It might be argued that these above provisions reflect "conflicting policy pronouncements." *Graf v. Graf,* 208 *N.J.Super.* 240, 243, 505 *A.*2d 207 (Ch.Div.1985). Plaintiff contends, at the very least, that these provisions are mutually exclusive and that the sale of property under equitable distribution can only occur "where a judgment of divorce or divorce from bed and board is entered," and at no earlier time in the pendency of the action. Therefore, the court must determine the appropriate construction of these provisions in resolving the issue presented herein.

## A. Trial Court Responsibility to Effectuate Legislative Intent

In construing a statute, the court must effectuate the Legislature's intent. *Monmouth County v. Wissell,* 68 *N.J.* 35, 44, 342 *A.*2d 199 (1975). Sources of legislative intent are the language of the statute, the policy behind the statute, concepts of reasonableness and legislative history. *Coletti v. Union Co. Bd. Of Chosen Freeholders,* 217 *N.J.Super.* 31, 35, 524 *A.*2d 1270 (App.Div.1987).

Moreover, "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'" *Schierstead v. Brigantine,* 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959). It must be assumed that the Legislature intended a reasonable approach, and the statute should be construed to effect such a reasonable approach. *Roman v. Sharper,* 53 *N.J.* 338, 341, 250 *A.*2d 745 (1969).

The construction of a statute "justly turn[s] on the breadth of the objectives of the legislation and the common sense of the situation. The spirit of the legislative direction prevails over its terms." *New Jersey Builders, Owners and Managers Ass'n. v. Blair,* 60 *N.J.* 330, 339, 288 *A.*2d 855 (1972), citing *Jersey City Chapter Property Owner's, etc. Assoc. v. City Council,* 55 *N.J.* 86, 100, 259 *A.*2d 698 (1969) and *Dvorkin v. Dover Tp.,* 29 *N.J.* 303, 315, 148 *A.*2d 793 (1959). A court must adopt an interpretation that will "make the most consistent whole of the statute." *State v. A.N.J., III,* 98 *N.J.* 421, 424, 487 *A.*2d 324 (1985).

If the plain language of the statute is clear and unambiguous, we need not look beyond the text to determine legislative intent. *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). However, when a statute includes provisions which appear inconsistent, an ambiguity arises and we must examine factors such as the purpose of the statute in order to ascertain the underlying or true legislative intent. *T.S.R. v. J.C.,* 288 *N.J.Super.* 48, 53–54, 671 *A.*2d 1068 (App.Div.1996).

### B. The Legislative purpose behind N.J.S.A. 2A:34–23

The Plaintiff's argument that equitable distribution may occur only at the time of final judgment, if at all, by necessity, calls into question the earlier language in *N.J.S.A.* 2A:34-23 that appears to grant broad authority to a court to make such matrimonial orders that are "fit, reasonable and just."

It should be noted that the later provision of the statute the plaintiff relies upon makes no distinction between real and personal property, or real property held by the entirety, or as joint tenants, or even as tenants in common. *See N.J.S.A.* 2A:34-23. Plaintiff's exclusivity argument, therefore, would have to apply to all property, and none could be distributed until judgment. However, cases decided subsequent to *Grange,* indicate that is not the situation, at least as various courts have dealt with its impact.

In *Witt v. Witt,* 165 *N.J.Super.* 463, 398 *A.*2d 597 (Ch.Div. 1979), the court acknowledged the *Grange* decision, but, nevertheless, concluded that the *pendente lite* sale of the marital home could be ordered against an absent party when it concluded he had previously consented to the sale by executing a listing agreement. In *Samuelson v. Samuelson,* 198 *N.J.Super.* 390, 487 *A.*2d 342 (Ch.Div.1984), *pendente lite* support was ordered to be paid from the interest accumulations from the sale proceeds of the

marital residence.[3]   In *Glatthorn v. Wisniewski,* 236 *N.J.Super.* 504, 566 *A.*2d 242 (Ch.Div.1989), the court ordered the sale of the marital home, *pendente lite,* held as a "joint possessory interest" pursuant to *N.J.S.A.* 3B:28–3.[4]

■ Each of these decisions subsequent to *Grange* have one thing in common, beyond the fact that they "chronologically" occur subsequent to that decision: while "the *Grange* rule ... continues to protect parties from *unnecessary* sale of marital ... property and proceeds distribution during the *pendente lite* period," *Glatthorn, supra,* 236 *N.J.Super.* at 509, 566 *A.*2d 242, sale and distribution can be ordered when the result would be the avoid-

---

[3] The court noted that the *Grange* decision has been criticized as "unduly restrictive, contrary to the broad discretionary powers of a court of equity and generally unfair." Supreme Court Committee on Matrimonial Litigation, (Pashman II), Phase Two, p. 6, Final Report (1981). The Committee recommended that a "trial court should also have the discretionary power to permit a party to utilize a portion of the proceeds when ... basic living expenses cannot be paid in any other way."

While a Supreme Court report is not a formal opinion, it is an important document and, in this case, the subject report "did not merely tangentially or inferentially comment on *Grange,* but in clear and explicit language rejected its holding." *Graf,* 208 *N.J.Super.* at 245, 505 *A.*2d 207 (The parties' stock may be sold *pendente lite,* and the sale need not await the entry of final judgment.).

[4] The *Glatthorn* court noted that while it was "not faced with a strict tenancy by the entirety," it acknowledged that "joint occupancy produces a possessory interest for the defendant which must be carefully weighed prior to a pre-divorce order for the sale of the marital real property." *Glatthorn,* 236 *N.J.Super.* at 507, 566 *A.*2d 242. Under *N.J.S.A.* 3B:28–3, no matter which spouse holds the legal title, when once, as married persons, they together occupy property as their principal marital residence, both have a right to the continued possession of it so long as their marriage endures and neither can affect the right of possession of the other without consent, except by judgment by a court of competent jurisdiction. *Pilone v. Blanda,* 226 *N.J.Super.* 397, 544 *A.*2d 439 (Ch.Div.1988).

Faced with ordering a sale that would extinguish the "possessory interest" and awaiting the entry of final judgment, nevertheless, the court in *Glatthorn* ordered the sale without the defendant's consent, with the proceeds being held in escrow for subsequent equitable distribution. 236 *N.J.Super.* at 509, 566 *A.*2d 242. It should also be noted that *N.J.S.A.* 3B:28–3 was enacted three years after *Grange* was decided.

ance of irreparable harm to a spouse and/or children. *See, Witt,* 165 *N.J.Super.* at 465–66, 398 *A.*2d 597; *Samuelson,* 198 *N.J.Super.* at 392 and 394, 487 *A.*2d 342; *Graf,* 208 *N.J.Super.* at 246, 505 *A.*2d 207; and, *Glatthorn,* 236 *N.J.Super.* at 506 and 508, 566 *A.*2d 242.

The *Grange* court concluded that it knew "of no statutory authority for *pendente lite* action *of this kind* in connection with equitable distribution." *Grange, supra,* 160 *N.J.Super.* at 158, 388 *A.*2d 1335 (second emphasis added). Therefore, it is important to determine what the court did, and did not intend to resolve. *Feldman v. Lederle Laboratories, supra,* 125 *N.J.* at 132, 592 *A.*2d 1176.

*Grange* involved the sale of real property, held, as in the present matter, as tenants by the entirety. However, in *Grange* the marital residence was unoccupied, and the sale represented what the trial court concluded was appropriate for this ill-advised investment property, since the sole argument between the parties was whether the sale price represented fair market value.

What was not a factor in the ordered "sale of convenience" in *Grange (see Graf,* 208 *N.J.Super.* at 244, 505 *A.*2d 207), was the necessity to avoid irreparable harm to a spouse and/or the children. Thus, the court noted that while under *N.J.S.A.* 2A:34–23, "the court, pending any matrimonial action, is vested with wide discretion in making such orders as are necessary for the maintenance of the parties," those circumstances were not present, or at least not found in the trial court's decision to order the sale without the defendant's consent. Thus, the statutory imperative was not present.

As to the *Grange* court's conclusion that the forced sale "would violate the very concept of a tenancy by the entirety," 160 *N.J.Super.* at 158, 388 *A.*2d 1335, as discussed earlier, the very reason for that "concept" is the advancement of the social policy "for the benefit of a spouse and any dependent children." *In re Youmans, supra,* 117 *B.R.* at 117.

It is abundantly clear that the "common sense of the situation" and the "spirit of the legislative direction," *New Jersey Builders, Owners and Managers Ass'n v. Blair, supra,* 60 *N.J.* at 339, 288 *A.*2d 855, require the conclusion that the Legislature intended to invest a court with broad discretion under *N.J.S.A.* 2A:34–23 to make such orders as are "fit, reasonable and just" to protect the parties and dependent children during and after the dissolution process. The statute must be read sensibly, concluding that "the Legislature intended a reasonable approach." *Roman v. Sharper, supra,* 53 *N.J.* at 341, 250 *A.*2d 745.

To conclude that the Legislature would permit or intend, for example, children to lack familial financial support while the marital home, with all its possible liabilities in draining needed resources or advantages in providing necessary resources, should be held until, finally, the entry of judgment, is not rational. It makes as much sense as concluding that under *N.J.S.A.* 2A:34–23 other property interests, real or personal, can be sold and distributed when hardship and pressing need arise under the marital relationship, but not real property held by the entirety, whose concept exists only for the very reason of advancing and protecting important marital interests.[5] A rigid, limited following of literal language would no more serve the statutory intent than an adherence to the ancient form of common law tenancy by the entirety, as an end in itself, would advance its relevant purpose in aiding the social policy of protecting spouses and children, as the

---

[5] Other jurisdictions have reached a similar conclusion. *See, e.g., Shoup v. Shoup,* 469 *Pa.* 165, 364 *A.*2d 1319 (1976) (citing *Shapiro v. Shapiro,* 424 *Pa.* 120, 224 *A.*2d 164, 172 (1966)); *Travis v. Benson,* 360 *A.*2d 506 (D.C.1976). Some jurisdictions have resolved the matter similarly under more explicit statutory language. *See, e.g., Weaver v. Weaver,* 88 *N.C.App.* 634, 364 *S.E.*2d 706 (1988). The court will not speculate as to whether, if the Legislature disagreed with the decision in *Grange,* why it did not amend *N.J.S.A.* 2A:34–23, no more than it will speculate as to whether the lawmakers were satisfied that the subsequent case law exceptions to *Grange* satisfied any concerns. Suffice to say that the *Grange* progeny has resulted in no further legislative action on the subject.

Legislature has also determined is necessary under the cited statute.

## IV. *Trial court authority to force the pendente lite sale of the marital home*

In the present case, the parties, though employed, earn almost equal income, according to each's Case Information Statement (CIS), i.e. plaintiff's income represents 48 percent and defendant's income represents 52 percent of total monthly available income. Defendant's health problems prevent him from continuing employment in a further, part-time job.

Each party's net monthly available income does not cover individual monthly expenses, even with the court making reasonable adjustments to the parties' itemized expenses. The plaintiff solely resides at the marital residence, while the parties' daughter attends college full-time in Vermont, with her own living and education expenses.

The mortgage, real estate taxes and homeowner's insurance for the marital residence consume approximately 57 percent of the plaintiff's available monthly income. This does not even include the costs of utilities and routine maintenance. Under court order, the defendant now pays 52 percent of these expenses from his already overexpanded income. He also now pays 52 percent of various credit cards, car insurance, sewer and daughter's college loan expense, as well as her unreimbursed medical expenses. Payment of his daughter's December college costs alone, as ordered by the court, is $1,232.40, representing approximately 47% of his available monthly income.

Though the defendant does not pay spousal support at this time, he has also been ordered to pay $122 per week in child support for his college daughter's needs. Similar obligations as outlined above are faced by the plaintiff whose income, as indicated, represents 48 percent of total available income. Even a transfer for nominal consideration of his interest in the marital residence to

the plaintiff would not relieve the parties' burdens, particularly given the plaintiff's already financially strained circumstances.

The marital residence is burdened with a mortgage of $162,000, and, according to the parties, is presently valued between $160,000 and $180,000. Even if only a small positive or negative equity is present, it is clear to the court that the financial circumstances of these parties are desperate, particularly in terms of meeting the support needs of their daughter. The preservation of the marital residence, essentially to maintain the plaintiff, is draining needed resources for the parties and their daughter. Its expense will continue to cause them all harm, and any equity realized from the sale could assure significant payment for their daughter's college needs. The parties simply do not have the financial resources to meet all their expenses and do everything required by court order. The failure of the court to act will cause all concerned irreparable harm.

■ Therefore, the court has concluded that the overriding "purpose of [*N.J.S.A.* 2A:34–23] is to give a matrimonial judge broad discretion and authority to fashion sagacious remedies on a case by case basis, which will achieve justice and fulfill the needs of the litigants." *Graf, supra,* 208 *N.J.Super.* at 243, 505 *A.*2d 207. Properly understood, *Grange* will "continue[s] to protect parties from unnecessary sale of marital ... real property," *Glatthorn, supra,* 236 *N.J.Super.* at 509, 566 *A.*2d 242, while permitting on a case by case basis the proper evaluation of the impact of the maintenance of that property on the parties economic well-being, when such concerns are present, regardless of the nature or form of that property or interest. As the Appellate Division stated in *State v. Saavedra,* 276 *N.J.Super.* 289, 647 *A.*2d 1348 (App.Div.1994):

. A statute should not be given an arbitrary construction, according to the strict letter, but rather one that will advance the sense and meaning fairly deducible from the context. The reason of the statute prevails over the literal sense of the terms; the obvious policy is an implied limitation on the sense of the general terms, and a touchstone for the expansion of narrower terms.

[*Id.* at 294, 647 *A.2d* 1348 (quoting *Wene v. Meyner,* 13 *N.J.* 185, 197, 98 *A.2d* 573 (1953)); and, *see also State v. Volpini,* 291 *N.J.Super.* 401, 408, 677 *A.2d* 780 (App.Div.1996).] [6]

Thus, the court will order that the marital residence shall be immediately listed for sale, with the sale expenses divided between the plaintiff and defendant, 48 percent and 52 percent, respectively.[7]

---

[6] Although the case law exceptions have produced more holes in it than Swiss cheese, *Grange* refuses to die. Every reported decision since *Grange* that appears to pronounce its passing in reality only avoids its harsh consequences by deftly distinguishing the facts of each case. This is the only appropriate role for the trial court. *Reinauer Realty Corp. v. Paramus, supra,* 34 *N.J.* at 415, 169 *A.2d* 814. Moreover, the exceptions to *Grange* provide the remedy to the harshness that concerned Pashman II until an appellate court may provide for its final *rest.* Thus, the *Grange* rule and the still viable concept of tenancy by the entirety will continue, of course properly limited and focused, when necessary, by the statutory framework herein discussed and the concerns that framework addresses.

[7] In denying the subsequent motion for reconsideration, the court further ordered that the property be listed at an initial price based upon an appraisal, and reduced at three 5 percent intervals thereafter to achieve a sale. The proceeds of sale were to be held in an interest-bearing account for the eventual equitable distribution between the parties, or to await further, if earlier, order of the court.