208 N.J. Super. 240 (1985)
505 A.2d 207
BARBARA GRAF, PLAINTIFF,
v.
ALFRED J. GRAF, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Somerset County.
Decided July 3, 1985.
*241 Joan G. Geiger, for plaintiff (Lieberman, Ryan, Richardson, Welaj & Miller, attorneys).
Robert F. Clark, for defendant (Silver & Clark, attorneys).
IMBRIANI, J.S.C.
May a court order the sale of marital assets prior to the entry of a judgment of divorce? Some confusion reigns because Grange v. Grange, 160 N.J. Super. 153 (App.Div. 1978), held that a court does not have the power to order the sale of a marital dwelling "prior to the dissolution of the marriage by a judgment of divorce." Id. at 159.
It has been assumed by many that Grange casts a net so broad that prior to the dissolution of a marriage by a judgment of divorce a court does not have the power to order the sale of any marital assets regardless of the factual situation involved. But is Grange really so expansive? The issue on appeal was:
[s]imply stated ... whether in a matrimonial matter the court may make a pendente lite order relating to the equitable distribution of the marital assets *242 and, more specifically, order the sale of the marital dwelling absent the consent of the parties. Id. at 157.
When Grange answered in the negative, it obviously only struck down the pendente lite sale of a marital dwelling in a situation where one of the parties sought an early sale of a marital asset. Yet, its application has extended far beyond its actual holding. And what is astonishing is that this inflexible rule has reigned uncontested for seven years with remarkably little erosion (in that period only three reported cases have even cited Grange) and despite scholarly criticism. See Supreme Court Committee on Matrimonial Litigation Final Report  (Pashman II), supplement issued with 108 N.J.L.J. 41, July 15, 1981.
Many theories have been advanced for the philosophy underpinning the rule. Some say that at the final hearing equity may dictate that marital assets be distributed in kind and, if they are sold earlier, this option is foreclosed. Others say that the statute, N.J.S.A. 2A:34-23, provides for the equitable distribution of marital assets at the time of the entry of a judgment of divorce  and not before. Still others, including Grange, say that since a marital dwelling is held as a tenancy by the entirety its distribution while the marriage subsists "would violate the very concept of a tenancy by the entirety." Id. at 158.
The husband, an engineer, and wife, a homemaker with a high school equivalency and no work skills, had one child. In 1983 they separated due to marital problems arising from the husband's sudden loss of employment. Over a year and a half later, while the husband was still unemployed, the wife filed a complaint for divorce and a pendente lite motion for support. Their Case Information Statements discloses no income and two major assets  the marital residence with $87,000 in equity and Exxon stock worth $4,000. For 20 months the husband, due to his unemployment, has failed to pay any support and the wife has been forced to live off accumulated savings, which are being quickly dissipated. Based on her monthly budget, what *243 is left will last only another month or two. She now seeks to sell the Exxon stock and use the proceeds to support her and the child of the marriage.
A literal and facial reading of N.J.S.A. 2A:34-23 reveals what appears to be conflicting policy pronouncements. The first sentence vests the court with broad discretion to make such orders as are necessary for the maintenance of the parties and their children. If this was all the statute said, the power of the court in appropriate cases to enter a pendente lite order to sell marital assets would be clear. But what creates doubt is the last paragraph, which appears to conflict with the earlier language and divests the court of some of its vast powers by providing that "where a judgment of divorce ... is entered the court may make [an] award ... to effectuate an equitable distribution of the property...." (Emphasis supplied). This language has suggested to some that marital assets may be sold only incident to the entry of a judgment of divorce  and not before.
If we apply a broad interpretation to the last paragraph of N.J.S.A. 2A:34-23, as is assumed to have been adopted by Grange, the result in this and many similar cases will be that in the absence of any income the courts will be without power to ensure the continued maintenance of the wife and children in spite of the fact that there are sufficient marital assets available to do so. Can this be what the Legislature intended? If so, what did it mean by the first paragraph, which states that:

[P]ending any matrimonial action ... the court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just.... [Emphasis supplied.]
It is axiomatic that the purpose of the statute is to give a matrimonial judge broad discretion and authority to fashion sagacious remedies on a case by case basis, which will achieve justice and fulfill the needs of the litigants. The Legislature was certainly aware of the time necessary to complete a case *244 (in some cases years) and it is inconceivable that it intended to prevent the sale or other disposition of marital assets during this period and expose the parties to potentially devastating consequences. Asset values could decline substantially during the pendency of a case due to economic or other forces beyond the control of the court or the litigants, such as a decline in market values, damage to the property, or waste due to spoilage. And here we have stock that could decline in value substantially should unfavorable economic news be announced or a recession occur. While it is true that property could increase in value, it is gainsaid that the cardinal aim of the court at this critical juncture in the lives of these parties is to preserve assets, not play the market and expose existing values to the vagaries of market fluctuations.
To read Grange so expansively as to prohibit the sale of marital assets prior to the entry of a judgment of divorce when necessary to ensure the continued maintenance of the parties and their children would do a disservice to an impoverished custodial parent and significantly diminish the power of this court to do equity during the pendency of a matrimonial action. This was also the opinion of the Pashman II report, which concluded that:
[T]he Grange rule is unduly restrictive, contrary to the broad discretionary powers of a court of equity and generally unfair ... [T]he trial court should also have the discretionary power to permit [the sale of equitably distributable assets] ... when basic living expenses cannot be paid in any other way. Id. at 6.
While this court is certainly bound by the decisions of the appellate courts, State v. Rembert, 156 N.J. Super. 203 (App. Div. 1978), it is only bound to follow rulings of the appellate courts when the same issues are presented. Caldwell v. Rochelle Park Tp., 135 N.J. Super. 66 (Law Div. 1975). Here the issues are not identical to those in Grange. Grange involved the sale of realty; we are dealing with personalty. Grange involved a sale of convenience; we are dealing with a sale of necessity. The differences are significant. And when the support and *245 maintenance of a dependent custodial parent and children are involved, as is the case here, the broad discretionary powers conferred upon the court by the first sentence of N.J.S.A. 2A:34-23 must apply, and not Grange.
This court is satisfied that Grange does not prohibit the pendente lite sale of marital assets when such proceeds are necessary to ensure the continued maintenance of a dependent spouse and children and, at most, should be limited under such circumstances to prohibiting the pendente lite sale of only the marital dwelling. However, even if this court misreads Grange, there is good reason why it should not be followed.
One must ask whether Grange remains the law of this State? Admittedly Grange has not been reversed or even questioned by an appellate court during the seven years of its life. Yet, one cannot ignore the studied, thoughtful and very critical language of the Supreme Court in its Pashman II report. And it is clear that when recent pronouncements from the Supreme Court enunciate a doctrine that "plainly undermine the authority of a prior decision although not squarely and explicitly overruling it", a trial court is "entitled to follow the current doctrine and need not be confined by the prior ruling." State v. Ciuffini, 164 N.J. Super. 145, 152 (App.Div. 1978).
While a Supreme Court report is not a formal opinion, it is more than a theoretical dissertation. It is the product of immense and profound research and analysis by leading members of the matrimonial bench and bar, which the Supreme Court, after its own consummate and thorough research, has given its imprimatiur. Moreover, this report did not merely tangentially or inferentially comment on Grange, but in clear and explicit language rejected its holding. Surely this constitutes something more than a mere comment and is notice to the matrimonial bench and bar that Grange should not be followed. If not, of what value is the report?
It is interesting to note that when confronted with Grange, courts have strained to avoid its harsh stricture. Samuelson v. *246 Samuelson, 198 N.J. Super. 390 (Ch.Div. 1985), permitted the distribution of interest earned on escrow money received from the sale of the marital home prior to the final divorce hearing and Witt v. Witt, 165 N.J. Super. 463 (Ch.Div. 1979), permitted the sale of the marital home where both parties had previously consented to its sale. Only Castonguay v. Castonguay, 166 N.J. Super. 546 (App.Div. 1979), cited Grange with approval but merely to hold that the death of one of the spouses abated the divorce action and all claims for equitable distribution of marital assets.
This court believes that Grange is both inapplicable to this situation and no longer the law of this State. A matrimonial judge has the power to order the sale of any and all marital assets, including the marital dwelling, whenever the proceeds are necessary to ensure the continued maintenance of a spouse and the children. This situation will arise when, as here, there is no income to pay living expenses or when the income available to pay such expenses is insufficient because some of the income must be diverted to pay expenses to maintain an asset, such as a dwelling. In the latter situation common sense may well dictate that the income draining asset be sold to free all of the income to pay living expenses.
The Exxon stock shall be sold forthwith and the proceeds used to support the wife and child. The allocation of the proceeds between the parties will be determined at the time of the final hearing. If the proceeds from the sale of the Exxon stock become dissipated, the court will entertain an application to sell the marital dwelling prior to the entry of a judgment of divorce.
It would be intolerable to expose this mother and her child to becoming public charges despite the availability of substantial assets which, paradoxically, could be a reason for denying her public assistance. Shades of Catch-22.