110 A.3d 986

## SKEY & BHATTACHARYA LLC, PLAINTIFFS,
## v. MURSHADA EHSAN, DEFENDANT.

Superior Court of New Jersey
Law Division
Somerset County
Special Civil Part

Decided December 12, 2014.

*W.S. Gerald Skey,* for plaintiffs (*Skey & Bhattacharya LLC,* attorneys).

*Richard A. Mastro,* for defendant (*Legal Services of Northwest Jersey, Somerset County Division,* attorneys).

MAWLA, J.S.C.

## STATEMENT OF REASONS

This case raises the issue of whether a matrimonial attorney fee retainer agreement is subject to the Truth in Lending Act ("TILA"), 15 *U.S.C.* § 1601 to 1667(f). The dispute arises out of legal services provided by plaintiffs to defendant. Defendant retained plaintiffs to represent her in a divorce by way of a retainer agreement executed on April 26, 2010. Plaintiffs state that they represented defendant for approximately six months, after which time defendant reconciled with her husband and the divorce was dismissed by way of a stipulation of dismissal filed on September 3, 2010. Plaintiffs allege that, because of defendant's financial difficulties, defendant was not required to pay a retainer up front. Instead, the agreement indicates that plaintiffs would

apply to the court for pendente lite financial relief for defendant, and that they would also seek an award of counsel fees from the court to fund the retainer.

Plaintiffs' billing records demonstrate that they zealously represented defendant's interest from the outset, including: preparing and filing the initial responsive pleadings, along with an emergent application; filing a motion to change venue; proposing a case management order; amending defendant's pleadings; preparing discovery demands; and ultimately preparing the stipulation of dismissal when defendant reconciled with her husband. In all, plaintiffs charged approximately $6,748.01 in attorney's fees and costs for their efforts on Defendant's behalf between April 2010 and September 2010, excluding interest. Giving defendant credit for a $2000 payment, the only payment on the account, and charging her interest of one percent pursuant to the agreement for unpaid balances exceeding thirty days, plaintiffs assert that defendant owes $7,157.90. Plaintiffs now move for summary judgment in the amount of $7,427.80 and for summary judgment dismissing defendant's counterclaim.

Defendant also seeks summary judgment in her cross-motion, and dismissal of plaintiffs' complaint. Defendant argues that she is a consumer, and the retainer agreement entered into is governed by TILA because it provides services for personal, family, or household purposes. 15 *U.S.C.* § 1602(i). Defendant states that a retainer agreement constitutes an open-end credit agreement, which must be disclosed before the first use of the account, and periodically by way of statements pursuant to 15 *U.S.C.* § 1637(a) and (b). An open-end credit agreement is defined as one "under which the creditor reasonably contemplates repeated transactions, which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 *U.S.C.* § 1602(j). Defendant asserts that even though a retainer fee was not paid at the outset of the representation, plaintiffs continued to provide services, which defendant contends is the epitome of a finance charge for an open-ended transaction.

Defendant contends that the retainer agreement attempts to circumvent TILA by designating the finance charge as a "late payment charge." Defendant points out that the monthly invoices designate those fees as a "finance charge." Defendant therefore suggests that by plaintiffs' own admission, it is a finance charge as defined in TILA. Defendant asserts that TILA applies because plaintiffs did not have to extend credit in terms of money, but only the right to pay a debt by deferring it over time, which is in and of itself an extension of credit under TILA.

Defendant relies on out-of-state authority, namely; *Kroll v. Cities Service Oil Co.*, 352 *F.Supp.* 357 (N.D.Ill.1972), and *Bright v. Ball Memorial Hospital Association, Inc.*, 616 *F.*2d 328 (7th Cir.1980), in pointing out the difference between late charges and finance charges. In both cases, the courts held that the distinction hinges on the denial of continued extension of credit. Defendant states that when credit is continued in all but emergency cases, the assessed interest is a finance charge. Defendant states that the transaction at issue began when plaintiffs extended credit to her, and despite the fact that the retainer was not paid, work began, was billed, and was subject to a finance charge that extended month after month. Defendant asserts that pursuant to 15 *U.S.C.* § 1601, "the term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment."

Defendant seeks an award of attorney's fees. She contends that attorney's fees are mandatory in a successful action under TILA, and that she will submit a certification of services upon the direction of the court pursuant to 15 *U.S.C.* § 1640(a), (e).

In reply, plaintiffs argue that the retainer agreement is not subject to TILA because attorney retainer agreements are not extensions of credit or open-ended credit plans and thus do not fall under TILA. Plaintiffs assert that the retainer agreement explicitly states that all bills are payable upon receipt, and does not give defendant the right to defer payment of debt, or to incur debt freely with the idea that payment could be deferred. Plaintiffs

state that entry into the retainer agreement was not tantamount to a grant of consumer credit, and that defendant could not reasonably believe she was receiving the equivalent of a bank loan or credit card such that the open-end credit definition would apply. And there was no finance charge applied to defendant's balance because of her nonpayment. Rather, plaintiffs argue that defendant had notice that a late payment charge would be added to her balance upon nonpayment because it was clearly stated in the retainer agreement. Plaintiffs argue that the retainer agreement indicated they would apply for an award of counsel fees, and that they did not represent defendant pro bono.

Plaintiffs contend that the relationship between an attorney and a client is not analogous to that of a credit card company and a debtor, and plaintiffs argue that attorney retainer agreements are not loans or extensions of credit against which clients may borrow. Plaintiffs state that TILA does not contemplate that attorneys and firms should act as banks or credit card companies. Plaintiffs state that even if TILA applies, it complied with the notice requirements of the statute. TILA requires that open-end credit disclosures be made initially and periodically. 15 *U.S.C.* § 1637. Plaintiffs state that it complied with these requirements because defendant was informed that all bills would be payable upon receipt, and if they were late, there would be a one percent charge applied. Plaintiffs contend that defendant received invoices periodically, but only made one payment in early 2012.

As far as the court can discern, the issues of whether a retainer for legal services falls within TILA, and whether an attorney who advances legal services without receipt of a retainer acts like a lender, are ones of first impression.

*Rule* 4:46–2(c) mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.*

67, 75, 110 *A.*2d 24 (1954). Summary judgment should be granted, therefore, only when no genuine issues of material facts are presented. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). The court must consider all pleadings filed with it to determine whether there is any genuine material issue. *Judson, supra,* 17 *N.J.* at 74, 110 *A.*2d 24.

The New Jersey Supreme Court in *Brill, supra,* 142 *N.J.* at 529, 666 *A.*2d 146 stated that, "[b]y its plain language, *Rule* 4:46–2 dictates that a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" That means, therefore, that "a non-moving party cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." A determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact-finder to resolve the alleged disputed issue in favor of the non-moving party. *Id.* at 540, 666 *A.*2d 146.

The "judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 549, 666 *A.*2d 146 (citing *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 248, 106 *S.Ct.* 2505, 91 *L.Ed.*2d 202 (1986)). Thus, if the evidence "is so one-sided that one party must prevail as a matter of law ... the trial court should not hesitate to grant summary judgment." *Id.* at 540, 666 *A.*2d 146.

■ The court grants plaintiffs' motion for summary judgment and denies defendant's cross-motion. The court finds that there is no genuine issue of material fact to thwart summary judgment as to whether the retainer agreement falls within the purview of TILA. Rather, the issue at bar is purely one of law. Without a doubt, the attorney client relationship is a unique relationship founded on the privilege of confidentiality between the attorney

and client, and on the former's obligation, indeed privilege, to serve the latter in a position of trust. In taking up the representation of a client, the attorney also bears the burden of the Rules of Professional Conduct and compliance with the Rules of Court in the attorney's "business" relationship with the client. *R.P.C.* 2.1 posits that the lawyer's relationship to the client is that of advisor, stating: "In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors that may be relevant to the client's situation."

Moreover, an attorney owes a myriad of other duties to the client, including the following: *R.P.C.* 1.1. competence; *R.P.C.* 1.2 obligation to comply with the client's decisions; *R.P.C.* 1.3 diligence; *R.P.C.* 1.4 communication; *R.P.C.* 1.5 reasonableness in fee arrangements; *R.P.C.* 1.6 confidentiality; *R.P.C.* 1.7, 1.8, 1.9, 1.10, 1.11 and 1.12 avoidance of conflicts of interest; *R.P.C.* 1.14 protecting a client under disability; and *R.P.C.* 1.15 safekeeping property, among other obligations.

A lender neither possesses the same characteristics nor holds the same duties to its client. Indeed, under TILA, a creditor is defined as:

> a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit. The term creditor includes a creditor's assignee, transferee, or subrogee who so participates. For purposes of §§ 1002.4(a) and (b), the term creditor also includes a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors, or selects or offers to select creditors to whom requests for credit may be made. A person is not a creditor regarding any violation of the Act or this part committed by another creditor unless the person knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction. The term does not include a person whose only participation in a credit transaction involves honoring a credit card.

[15 *C.F.R.* § 1002.2(*l*).]

A creditor's obligations then, are entirely different from those of an attorney.

An attorney's ability to enter into a business transaction with a client is circumscribed. *R.P.C.* 1.8(a) provides that:

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client; (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

Thus, while attorneys operate law practices as businesses, they do not fall, in any imaginable sense, into the category of a bank, credit card company, or a lender. This fact is confirmed by a plain reading of TILA.

As our Supreme Court recently held:

The goal of all statutory interpretation "is to give effect to the intent of the Legislature." We first look to the statutory language, which generally is the "best indicator" of the Legislature's intent. Only if the language of the statute is shrouded in ambiguity or silence, and yields more than one plausible interpretation, does the court turn to extrinsic sources, such as legislative history.

[*Maeker v. Ross,* 219 *N.J.* 565, 575, 99 *A.*3d 795 (2014) (citations omitted).]

A review of the plain language of TILA confirms to the court that attorney fee retainer agreements are not and were not intended by Congress to be considered credit agreements. As noted above, an attorney does not match the definition of a creditor as defined by 15 *C.F.R.* § 1002.2(1). TILA was enacted to further economic stabilization between financial institutions and firms that "engaged in the extension of consumer credit" by ensuring that those who take part in such activity have an informed use of credit and the cost that accompanies it. 15 *U.S.C.* § 1601(a). The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 *U.S.C.* § 1601(a).

■ Assuming arguendo that the court agreed with defendant that TILA is applicable, defendants' argument would still be unpersuasive because plaintiffs complied with the notice requirement set forth in 15 *U.S.C.* § 1637(a) and (b). Pursuant to the statute, open-ended credit disclosures must be made initially, in addition to periodically. Here, upon entering into the retainer agreement, defendant was informed that the bills she incurred would be payable upon receipt. Defendant was also put on notice that in the event of late payment, she would be subject to a one percent late fee. Moreover, it is undisputed that defendant received periodic invoices, and yet, despite these notifications, she made only one payment. Therefore, although the court has found that TILA does not apply to retainer agreements, if it did, plaintiffs would be in compliance with its requirements.

Although defendant contends that plaintiffs extended credit to her by way of the retainer agreement, it is not reasonable to assert that a retainer agreement is synonymous with a loan or an extension of credit against which funds may be borrowed. The arrangement here was what one would expect of members of our matrimonial bar pursuant to *R.P.C.* 1.8(e)(1), namely, when necessary, to not permit a client in need to go unrepresented where there is the means to advance the costs of litigation until a court order can be obtained to compel the supporting spouse to pay the supported spouse's counsel or to sell an asset to fund the litigation. *See Randazzo v. Randazzo,* 184 *N.J.* 101, 113, 875 *A.*2d 916 (2005) (sanctioning liquidation of assets to fund a litigation) and *Williams v. Williams,* 59 *N.J.* 229, 233–34, 281 *A.*2d 273 (1971) (addressing need for counsel fees and the ability to pay as factors in an award of fees). That plaintiffs took on a client without a retainer, to the client's benefit, does not equate them with a lender, and should not extinguish their claims for payment for legal services rendered. For these reasons, summary judgment in defendant's favor does not lie.

In all other respects, the accuracy of plaintiffs' billing is not challenged, and the court's review of plaintiffs' billing records

reveals nothing unreasonable or aberrational. The court finds that plaintiffs' proofs comply with *Rule* 6:6–3(a), and that no material dispute in fact exits to thwart summary judgment in favor of plaintiffs.

For these reasons, plaintiffs' motion is granted and judgment is entered against defendant in the amount of $7,427.80. Defendant's motion to dismiss plaintiffs' pleadings is denied.