**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0749-24

ROBERT PAGLIARO
and LAURA LIANG,

     Plaintiffs-Respondents,

v.

XIAOBING WANG,

     Defendant,

and

TIANLE LI,

     Defendant-Appellant.

_____

Submitted October 15, 2025 – Decided October 30, 2025

Before Judges Rose and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FD-12-0474-25.

Tianle Li, appellant pro se.

Arndt & Sutak, LLC, attorneys for respondents (Alison J. Sutak, on the brief).

PER CURIAM

Defendant Tianle Li appeals from an August 19, 2024 Family Part order awarding legal and physical custody of her teenage son to plaintiffs Robert Pagliaro and Laura Liang, and an October 31, 2024 Family Part order denying without prejudice the application for custody filed by defendant and her mother, Jian Zhang.[1]  In her self-represented merits brief, defendant raises eight overlapping arguments challenging the orders under review.  The gravamen of her contentions is that plaintiffs were awarded custody of the child without a plenary hearing and custody should have been awarded to Zhang.  Defendant also asserts, without support, plaintiffs abused the child when he previously was in their care and the child's guardian ad litem stole money from his trust fund.  For the reasons that follow, we affirm the orders and remand in part for proceedings consistent with this opinion.

---

[1] Zhang is not a party to this appeal.

A-0749-24

## I.

## A.

We incorporate by reference the atypical circumstances giving rise to the present appeal, which are detailed in our 2017 opinion affirming Family Part orders that granted legal and physical custody of the child to his paternal uncle, Xiaobing Wang (Wang or uncle).[2] Wang v. Zhang, No. A-3899-14 (App. Div. Jan. 13, 2017) (slip op. at 1-34). We reiterate the facts, events, and rulings that are pertinent to this appeal.

"Jeremy,"[3] born January 2009, is the biological son of defendant and Xiaoye Wang (decedent), who was poisoned to death by defendant in January 2011. Id. at 1-2. Convicted of murder in September 2013, defendant is serving a life sentence with a sixty-two-year parole disqualifier.[4]

---

[2] Before the Family Part in the present matter, Wang supported plaintiffs' application for custody; he is not participating in this appeal.

[3] Consistent with our 2017 opinion, we use the same pseudonym to protect the child's privacy. See Wang, slip op. at 1 n.1.

[4] After we decided Wang, we affirmed defendant's convictions for first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2), and third-degree hindering apprehension, N.J.S.A. 2C:39-3(b)(4). State v. Li, No. A-1318-13 (App. Div. Apr. 24, 2018) (slip op. at 1). In her merits brief for the present appeal, defendant maintains her innocence.

A-0749-24

Following defendant's arrest, the Division of Child Protection and Permanency instituted Title Nine proceedings against her and placed Jeremy in a resource home. Id. at 2. Wang informed the Division he wished to assume care and custody of Jeremy. Id. at 2-3. Because he resided in China, the uncle and his family underwent an international home study in May 2011. Id. at 3.

In the meantime, Zhang, who also resided in China, moved to the United States and into the family home in Monroe to care for Jeremy. Ibid. Defendant thereafter voluntarily transferred legal and physical custody of Jeremy to Zhang in a "non-Title Nine proceeding" and the Division terminated its Title Nine proceeding. Ibid.

In August 2011, the Probate Part appointed Jeremy's uncle as co-administrator of decedent's estate and Ann Renaud, Esq., as Jeremy's guardian ad litem.[5] Ibid. That same month, Wang instituted an action against defendant and Zhang for custody of Jeremy. Ibid. For reasons that were unclear from the record before us in our 2017 opinion, a plenary hearing was not conducted until February 2015. Id. at 4. At that time, Jeremy was six years old. Id. at 5.

---

[5] Before the Family Part in the present matter, Renaud supported plaintiffs' application for custody; she is not a party to this appeal.

A-0749-24

Renaud, Wang, and Zhang testified at the two-day hearing. Ibid. The trial judge thereafter "issued a lengthy written opinion in which he reviewed the testimony, made credibility findings, identified the applicable law and explained his reasons for determining that Jeremy should go to China to live with his uncle." Id. at 16. Relevant to the motion judges' decisions in the present matter, the trial judge

> made three fundamental findings that: 1) although [defendant] "has a right to a relationship with her son, the quality and quantity of that relationship is curtailed by the extraordinary circumstances of this case for which she is solely responsible"; 2) [Zhang], "despite commendably taking temporary custody of her grandson, does not stand in the shoes of a natural parent such that the [c]ourt should presume continuing custody with her is in Jeremy's best interests"; and 3) neither party "wishes to completely terminate" [defendant]'s parental rights.[6]
>
> [Id. at 16-17 (third alteration in original).]

Recognizing defendant's lifetime incarceration made her incapable of raising her son, "[t]he judge thus turned to the best interests standard of N.J.S.A. 9:2-4[(c)], modified to address the situation before him, to determine which of the parties should be awarded custody of Jeremy." Id. at 17. Pertinent to the motion judges' decisions in the present matter, the trial judge found, among other

---

[6] To date, defendant's parental rights to Jeremy have not been terminated.

A-0749-24

reasons, "[Zhang] is 71 years old, and would be in her eighties before Jeremy graduated high school. Her ability to provide adequate care and supervision at that time would come into question." Ibid. The judge also found Zhang "does not drive" and, as such, would be unable to address Jeremy's transportation needs in an emergency; "does not speak, read, or write English"; "has some problems in disciplining Jeremy," which could "cause further problems as Jeremy gets older"; and "is adversely influenced by [defendant,]" whose "premeditated murder of [decedent] resulted in the child['s] being foisted upon the judicial system to look out for his best interests." Id. at 17-19. The judge elaborated: "Clearly [defendant] did not have his best interests in mind when she did what she did. In essence[,] her actions have forfeited her ability to have a major influence in her son's life. Her attempts to do so through [Zhang] are not to be rewarded." Id. at 19.

A March 6, 2015 order memorialized the trial judge's decision awarding Wang physical and legal custody, effective July 10, 2015. Ibid. The order required Wang to: "promote frequent communication" between Jeremy and defendant and Zhang; arrange visitation with defendant "every 30 months" and with Zhang whether she lived in China or the United States; and provide

6

A-0749-24

defendant and Zhang "regular updates on the child's educational and medical progress." Id. at 19-20.

Defendant and Zhang moved for reconsideration and for a stay of the order; the trial judge denied the motion; we denied the emergent application for a stay; and the Supreme Court reversed and issued a temporary stay pending disposition of our decision on the emergent motion. Id. at 20. On May 22, 2015, we issued a stay pending appeal and accelerated the appeal. Ibid. Nonetheless, protracted litigation followed. Id. at 20-21.

In essence, in September 2015, Renaud notified the trial judge "of certain alarming developments with regard to Jeremy," including her "frustration with her inability to consistently receive information about Jeremy from the Division . . . which, she reported, had become increasing concerned and involved with his care." Ibid. The trial judge issued an amplified statement pursuant to then-Rule 2:5-1(b).[7] Id. at 21. Wang moved to supplement the record before us with Renaud's correspondence to the trial court; we ultimately granted Wang's motion for a remand; and the trial judge conducted a plenary hearing on February 3, 2016, during which Renaud and Zhang testified. Ibid.

---

[7] The rule was amended, effective September 1, 2022, for reasons that are not pertinent here, and is now redesignated as Rule 2:5-1(d).

A-0749-24

On February 19, 2016, the trial judge issued a supplemental decision based on the testimony adduced at the hearing. Id. at 33. Relevant here, the judge found, in pertinent part:

> [T]he February 3, 2016 hearing positively reinforced the court's opinion that Jeremy's best interests require him to live with his uncle in China. He was removed from the physical custody of [Zhang] on October 15, 2015 and placed with a resource family in Dunellen.[8] He still remains with that family. It appears very unlikely that Jeremy would be returned to the care of [Zhang]. There are several reasons for that conclusion. [Zhang] does not have suitable living accommodations for herself, let alone Jeremy. She has demonstrated an inability to properly supervise Jeremy. [The psychiatrist]'s report indicates that "[the Division] has informed [the school counselor] that it supports the plan to place Jeremy with his paternal uncle in China."
>
> [Id. at 33-34 (last alteration in original) (emphasis added) (footnote omitted).]

The trial judge concluded "Wang should become the custodian of Jeremy immediately" because "[t]o refrain from doing so will only serve to negatively impact Jeremy's development." Id. at 34. But defendant and Zhang appealed, and we stayed the trial judge's memorializing order. Ibid.

---

[8] We glean from the motions judges' decisions in the present matter, plaintiffs are the resource family referenced in the trial judge's decision and Jeremy was placed in their care from October 15, 2015 until sometime in 2017, when he was between six and eight years old.

A-0749-24

In January 2017, we issued our order affirming the Family Part's 2015 and 2016 orders for the reasons expressed in the trial judge's accompanying written decisions. Id. at 35. In doing so, "[w]e agree[d] with the trial court that this case obviously does not fit neatly within the confines of the usual custody case." Ibid. We also agreed "[Zhang] does not stand in the shoes of a natural parent in her custody dispute with the uncle." Id. at 37. We remanded the matter to the trial judge to manage the transition from Jeremy's resource family in this state to Wang in China. Id. at 44. In April 2017, the Court denied the petition for certification filed by defendant and Zhang. Wang v. Zhang, 230 N.J. 218 (2017).

B.

Against that historical landscape, we distill the present circumstances from the limited record provided on appeal. According to the written decisions accompanying the August 19, 2024 and October 31, 2024 orders, the competing applications for orders to show cause were decided by both motion judges "on the papers." The nature and content of those papers, however, are unclear from the record.

In her appellate appendix, defendant includes only: the third and fourth pages of plaintiffs' August 2024 emergent order to show cause application;[9]

---

[9] It is unclear from the record whether this document is a certification.

correspondence dated August 16, 2024 from plaintiffs' counsel to the court correcting fee deficiencies regarding the emergent application – indicating a copy was sent to defendant via regular mail; and the first page of the certification filed by Zhang and defendant in support of their emergent application for an order to show cause, seeking to place Jeremy in the legal and physical custody of Zhang and remove Renaud as guardian ad litem. Plaintiff also includes the order and decisions under review, and prior orders and decisions that are not relevant to our determination. Represented by counsel on appeal, plaintiffs did not file a responding appendix.

In his statement of reasons accompanying the August 19, 2024 order, apparently referencing unspecified documents, the first motion judge explained, "Wang represents that the child can no longer reside with him in China" because Jeremy's school closed and "[t]here is no appropriate school available to meet the child's educational, social, and emotional needs." The judge noted Jeremy, who was fifteen-and-one-half years old at the time of the application, desired to return to this state, "reside under the care and control of . . . [p]laintiffs," and attend a particular academy. The judge elaborated:

> To be clear, the child, . . . Wang, and [Renaud] all join in [plaintiffs'] request and believe that it is in the child's best interests. In light of this unanimous consensus and the fact that the matter is time sensitive insofar as the

10

> 2024-2025 school year is about to commence, emergent
> relief is warranted and appropriate.

According to the judge, plaintiffs were Jeremy's resource parents for approximately two years and assisted in his transition to China when Wang was awarded custody. The judge found plaintiffs maintained a relationship with Jeremy while he lived with Wang. The judge detailed the plan for Jeremy to enroll in a specific academy and reside with plaintiffs "on weekends and during school recesses." The judge stated "[p]laintiffs need custody to enroll the child in school and for medical insurance purposes."

Quoting an unspecified document, the judge noted Renaud's opinion that plaintiffs "are the best thing that eve[r] happened to [Jeremy]." Citing the trial judge's 2015 and 2016 decisions and our 2017 opinion, the motion judge was convinced the concerns about Zhang "would remain as legitimate concerns today." Rather than "subjecting the child to more interviews, experts, litigation, and significant professional and legal fees," the judge chose to "take immediate action to try and help th[e] child," who not only suffered "the loss of his father at a very young age," but also "the trauma of his mother['s] serving a life sentence for his father's murder."

For reasons that are unclear from the record, however, the judge "assume[d]" defendant and Zhang would oppose plaintiffs' application. As

11

noted, the record includes correspondence from plaintiffs' counsel to the court concerning the emergent application, with a copy sent to defendant via regular mail. Less clear is whether or when defendant received plaintiffs' application.

In any event, thereafter, defendant and Zhang filed their emergent application seeking to award Zhang custody of Jeremy.[10] In his statement of reasons accompanying the October 31, 2024 order, the second motion judge "expressly incorporated . . . by reference" the first motion judge's decision.

## II.

A decision regarding child custody is within the sound discretion of the family court judge. See Randazzo v. Randazzo, 184 N.J. 101, 113 (2005). Appellate courts defer to the factual findings of Family Part judges in view of their "special jurisdiction and expertise in family matters." Cesare v. Cesare, 154 N.J. 394, 413 (1998). Accordingly, "the opinion of the trial judge in child custody matters is given great weight." Terry v. Terry, 270 N.J. Super. 105, 118 (App. Div. 1994). However, we accord less deference when reviewing a custody order issued without a plenary hearing. See N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009) (recognizing "when no hearing takes place,

---

[10] In her merits brief, defendant asserts she filed her application on September 18, 2024, but in the second judge's statement of reasons, he noted defendant's application was filed on October 29, 2024.

no evidence is admitted, and no findings of fact are made . . . appellate courts need not afford deference to the conclusions of the trial court").

"A party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). "Absent exigent circumstances, changes in custody should not be ordered without a full plenary hearing." Faucett v. Vasquez, 411 N.J. Super. 108, 119 (App. Div. 2009).

Our Supreme Court has long recognized "[t]he paramount consideration in child custody cases is to foster the best interests of the child." Beck v. Beck, 86 N.J. 480, 497 (1981). The Court has described this standard "as one that protects the 'safety, happiness, physical, mental and moral welfare of the child.'" Ibid. (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)). Under the parens patriae doctrine, "[courts] are empowered to intervene to protect children from both physical and emotional harm." Segal v. Lynch, 413 N.J. Super. 171, 188 (App. Div. 2010).

Ordinarily, we would apply these guiding legal principles to the orders under review. Here, however, defendant failed to provide this court with those parts of the trial court record "essential to the proper consideration of the issues" pursuant to Rule 2:6-1(a)(1)(I). See Soc'y Hill Condo. Ass'n, Inc. v. Soc'y Hill

Assocs., 347 N.J. Super. 163, 177 (App. Div. 2002) (recognizing the appellant's obligation under the rule to provide the essential portions of the trial record). Defendant's appendix should have included complete copies of both emergent applications and supporting certifications. Without those documents, we simply cannot perform our appellate function. Thus, on the limited record provided on appeal, we cannot conclude the first motion judge abused his discretion in awarding plaintiffs temporary legal and physical custody of Jeremy on an emergent basis, or the second motion judge abused his discretion in declining to disturb that custodial arrangement. See Randazzo, 184 N.J. at 113. Accordingly, we affirm the orders under review. See Soc'y Hill, 347 N.J. Super. at 177-78 ("Without the necessary documents . . . . we have no alternative but to affirm.").

We recognize, however, circumstances may have changed in the one year since the second motion judge's order was issued. Further, while this appeal was pending, the Family Part issued orders on May 8, 2025 and July 18, 2025,[11] denying without prejudice defendant's applications to modify custody for lack of jurisdiction. See R. 2:9-1(a). Accordingly, within thirty days of our order,

---

[11] Pursuant to N.J.R.E. 201(b)(4), we take judicial notice of trial court records where "the action is pending." See also N.J.R.E. 202(b).

A-0749-24

the Family Part shall conduct a conference with all parties present, on notice to the Division as the court deems appropriate, to establish a briefing schedule for defendant's pending applications to modify custody. We leave to the court's sound discretion, in consultation with the Bureau of Prisons, whether defendant may appear virtually from prison at the conference and any future court hearings. We express no opinion on the merits of defendant's pending applications.

To the extent not addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and remanded in part for proceedings consistent with this opinion. Jurisdiction is not retained.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

15

A-0749-24